IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JUSTIN CHARLES HERNANDEZ, | Cause No. CV 22-51-M-DWM |
| Petitioner, | |
| vs. | ORDER |
| PETER BLUDWORTH; AUSTIN KNUDSEN, | |
| Respondents. | |

This case comes before the Court on Petitioner Justin Charles Hernandez's petition for writ of habeas corpus under 28 U.S.C. § 2254. Hernandez is a state prisoner proceeding pro se.

On September 27, 2022, the Court ordered Hernandez to show cause why his federal petition should not be dismissed with prejudice as time-barred and/or procedurally barred. (Doc. 5.) Hernandez filed his response on October 14, 2022. (Doc. 8.)

## I. Preliminary Review

Before the State is required to respond, the Court must determine whether "it plainly appears from the petition and any attached exhibits that the prisoner is not entitled to relief." Rule 4(b), Rules Governing § 2254 Cases in the United States

1

District Courts. A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). But the Court should "eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, § 2254 Rules.

## II. Background

Hernandez was initially charged in Montana's Eleventh Judicial District Court, Flathead County, with sexual intercourse without consent, a violation of Mont. Code Ann. § 45-5-503. The offense was alleged to have continued over a period of two and a half years and involved his young niece, aged seven or eight. Pursuant to a plea agreement, Hernandez pled guilty to a reduced charge of sexual assault, a violation of Mont. Code Ann. § 45-5-502. He was sentenced to serve 40 years with no parole for 15 years.

Hernandez appealed the sentence. The Montana Supreme Court affirmed it on July 9, 2019. On September 6, 2019, Hernandez applied for sentence review. The Sentence Review Division of the Montana Supreme Court removed the 15-year parole restriction.

Hernandez filed a petition for postconviction relief in the trial court. He states that it was dismissed as untimely. (Doc. 8 at 2.) Hernandez appealed, but

his appeal was dismissed because he failed to correct deficiencies in his opening brief.

Hernandez filed his federal petition on March 17, 2022. Among other claims, he alleges that his attorney promised to "have [Hernandez] out in 9 months" if he signed the plea agreement and pursued an appeal and sentence review. *See* Pet. (Doc. 4-1) at 24.

On September 27, 2022, the Court ordered Hernandez to show cause why the petition should not be dismissed with prejudice as time-barred and procedurally barred. His timely responses clarified his state court timeline and are addressed below. (Doc. 8.)

### III. Analysis

#### A. Federal Statute of Limitations

##### 1. Trigger Date

As the Court explained in the previous order, (*see* Doc. 5 at 3–4), a one-year limitations period applies to petitions filed by state prisoners under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2244. Because Hernandez does not suggest a different "trigger" date applies, *see id.* § 2244(d)(1)(B)–(D), Hernandez's federal petition had to be filed within one year of the date his conviction became final, *see id.* § 2244(d)(1)(A). Hernandez's conviction became final 90 days after the Montana Supreme Court's ruling on his direct appeal. *See Gonzalez v. Thaler*, 565 U.S.

3

134, 150 (2012). As the Montana Supreme Court ruled on July 9, 2019, Hernandez's conviction became final on October 7, 2019.

### 2. Tolling for Collateral Review

Federal time is tolled while a "properly filed application for State post-conviction or other collateral review" is "pending." 28 U.S.C. § 2244(d)(2). The tolling provision of § 2244(d)(2) can repeatedly start and stop, starting when a state collateral proceeding is started and stopping when the state proceeding concludes.

#### a. Sentence Review

Hernandez applied for sentence review[1] on September 6, 2019, *see* Resp. Ex. (Doc. 8-1 at 1), shortly before his conviction became final. For that reason, when Hernandez's conviction became final, the federal limitations period commenced under § 2244(d)(1)(A) and also was immediately tolled under § 2244(d)(2). Thus, no time counts against Hernandez under the federal limitations period until the Sentence Review Division ruled on his application.

The date of the Division's ruling is not altogether clear. The decision of the Sentence Review Division states that a hearing took place on February 20, 2020, and that the decision was "[d]one" on that day. *See* Decision at 2, *State v. Hernandez*, No. 16-444, *available at* https://courts.mt.gov/Courts/boards/

---

[1] Sentence review under Montana law appears to be collateral in nature. *See, e.g., Rogers v. Ferriter*, 796 F.3d 1009, 1010–11 (9th Cir. 2015).

SentenceReviewDivision (accessed Oct. 17, 2022). But the decision was dated March 14, 2020, and filed and served on March 16, 2020. For present purposes, the Court will assume that the latest of these dates, March 16, 2020, controls. Therefore, the first day on which the federal limitations period ran, free of tolling under § 2244(d)(2), was March 17, 2020. Hernandez had one year from that date to file his federal petition, meaning he had to file on or before March 16, 2021.

### b. Postconviction Review

On March 9, 2021,[2] seven days before his federal time expired, Hernandez submitted a petition for postconviction relief to the trial court. A petition for postconviction relief is a form of state collateral review and would, if "properly filed," toll federal time under 28 U.S.C. § 2244(d)(2).

Montana law provides that his time to file a postconviction petition began to run ninety days after the Montana Supreme Court denied his appeal on direct review. *See* Mont. Code Ann. § 46-21-102(1)(b). Hernandez states that the trial court dismissed his postconviction petition as untimely. *See* Resp. to Order at 2.

---

[2] Montana's state courts do not (and are not obligated to) apply the prison mailbox rule. *See Orpiada v. McDaniel*, 750 F.3d 1086, 1089–90 (9th Cir. 2014); *Bullock v. State*, 2020 MT 57N ¶ 7 (citing the rule of *Houston v. Lack*, 487 U.S. 266 (1988), and noting, "We have never applied this rule, known as the prison mailbox rule, to documents filed in state court."). Hernandez shows only the date he signed the postconviction petition, not the date the trial court filed it or the date he deposited it in the prison mail system. *See* Resp. Ex. (Doc. 8-1 at 3). Under the circumstances, however, the precise date of his postconviction filing does not make a difference in the analysis.

An untimely application for collateral relief is not "properly filed." *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). Therefore, no time was tolled under § 2244(d)(2) from the day Hernandez filed his postconviction petition until October 5, 2021, when the Montana Supreme Court dismissed his appeal for failure to file an opening brief. *See Pace*, 544 U.S. at 416–17; Resp. Ex. (Doc. 8-1 at 6).

### 3. Additional Time

Federal time continued to run from October 6, 2021, until March 17, 2022, the date Hernandez himself signed and refiled the petition his mother had submitted on March 4, 2022. *See* Pet. (Doc. 4) at 17.

In all, 717 days ran against Hernandez under the one-year federal limitations period. His federal petition is untimely by 352 days.

To consider the merits of Hernandez's claims, therefore, the Court would have to find either that he is entitled to equitable tolling for the entire period of time extending from March 16, 2021, to March 4, 2022, or that, in view of all the evidence, no reasonable juror would find him guilty of the offense of conviction.

### 3. Equitable Tolling

A state prisoner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*,

560 U.S. 631, 649 (2010). "The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Holland*, 560 U.S. at 653. An "extraordinary circumstance" is something "external" to the prisoner or "beyond his direct control." *Velasquez v. Kirkland*, 639 F.3d 964, 969 (9th Cir. 2011) (internal brackets omitted). "[T]he proper inquiry is not how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008) (discussing *Mendoza v. Carey*, 449 F.3d 1065, 1069–70 (9th Cir. 2006)). The petitioner must be reasonable diligent "not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court." *Smith v. Davis*, 953 F.3d 582, 598–99 (9th Cir. 2020) (en banc). And the extraordinary circumstance must prevent timely filing or, as some circuit cases have said, proximately cause the untimely filing. *See id.* at 600; *Spitsyn v. Moore*, 345 F.3d 796, 802 (9th Cir. 2003), *cited in Smith*, 953 F.3d at 589; *Stillman v. LaMarque*, 319 F.3d 1199, 1203 (9th Cir. 2003).

Hernandez refers to pandemic-related lockdowns from June to October 2021 that prevented him from submitting an opening brief to the Montana Supreme Court. Certainly, the occurrence of a viral or disease outbreak could be an extraordinary circumstance supporting equitable tolling. But Hernandez's federal

petition was already untimely as of March 16, 2021, so extraordinary circumstances between June and October of 2021 played no role in preventing him from filing on time. Earlier lockdowns could have played some role in Hernandez's untimely filing, but he does not allege facts sufficient to support an inference that lockdowns caused his untimely federal filing.

As for diligence, Hernandez does not say anything about what he did to attempt to file a federal petition. He managed, after all, to file a state postconviction petition. State law clearly describes the required filing date for postconviction petitions, so he cannot show "reasonable confusion about whether [his] state filing would be timely." *Pace*, 544 U.S. at 416. Even after the trial court ruled the state petition untimely, Hernandez does not allege facts suggesting he acted with reasonable diligence by attempting to prepare or file a federal petition. He refers to the "unauthorized destruction" of his state petition, but reasonable diligence would have included requesting another copy of the petition from the trial court. *See* Resp. to Order (Doc. 8) at 1–2; Resp. Ex. (Doc. 8-1 at 4); *Pace*, 544 U.S. at 416–17 (referring to "protective filing"). Hernandez offers no reasonable explanation for the nine-month gap between the trial court's dismissal of his postconviction petition and the filing of his federal petition.

Even with liberal construction, Hernandez does not allege facts that might support sufficient equitable tolling to make his federal petition timely. *See Smith*,

8

953 F.3d at 586 (rejecting "stop-clock" approach to equitable tolling of federal habeas limitations period).

### B. Procedural Default

A federal habeas court generally cannot hear claims that have not been fairly presented in state court. *See, e.g.*, *Gray v. Netherland*, 518 U.S. 152, 165 (1996); *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). In his appeal on direct review, Hernandez raised claims relating to his sentence. *See State v. Hernandez*, 2019 MT 159N ¶¶ 1–12. He did not present any claims in his postconviction appeal, which was dismissed for failure to correct deficiencies[3] in the opening brief. *See* Order, *Hernandez v. State*, No. DA 21-0267 (Mont. Oct. 5, 2021), *available at* https://supremecourtdocket.mt.gov (accessed Oct. 18, 2022). In his federal petition, he raises claims relating to his conviction and alleges prosecutorial and judicial misconduct at sentencing. *See* Pet. (Doc. 4) at 1–17; Pet. Attachment (Doc. 4-1) at 1–34. None of these claims was presented to the Montana Supreme Court. In such a case, to excuse his procedural default, his must establish eligibility for one of the exceptions to the rule. Hernandez was advised of this and

---

[3] These deficiencies evidently included failure to attach a certificate of service, tables of contents and authorities, a statement of the issues, and citations to authorities and the record. See Order at 1–2, *Hernandez*, No. DA 21-0267 (Mont. July 27, 2021). Hernandez was given two opportunities to correct them. *See id*; Order at 1, *Hernandez*, No. DA 21-0267 (Mont. Sept. 2, 2021). He did not file anything in response.

submitted his document to support avoiding the limitation on procedural default. (Doc. 8.)

   1.   **Legitimate excuse for default**

Hernandez again relies on the COVID pandemic to excuse his failure to file before the Montana Supreme Court. (Doc. 8 at 3.) For the same reasons explained above, Hernandez has provided no legitimate excuse for his default, that "some objective factor external to the defense" prevented him from raising his claims in state court. *Cook v. Schriro*, 538 F.3d 1000, 1027 (9th Cir. 2008) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). He has not plausibly suggested that he could not seek an extension to file his amended document in the Montana Supreme Court, especially given that he had already been granted an extension. (Doc. 8 at 2.)

   2.   **Actual innocence**

Finally, Hernandez asserts that he is innocent because the State did not produce adequate evidence of his guilt. Hernandez cites cases for the proposition that an admission of guilt, without corroborating evidence of a crime, is insufficient to support a conviction. (Doc. 8 at 4–7.) He asserts that "without physical or corroborative evidence to support testimony or admission the prosecution did not prove beyond a reasonable doubt a crime was committed and had no grounds to convict." (Doc. 8 at 6.) In part, he relies on a comment of the

sentencing judge that "the original charge was not proved but the matter was resolved by plea." (Doc. 8 at 6.)

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, […] or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup v. Delo,* 513 U.S. 298, at 329 (1995)).

Any gateway innocence claim is foreclosed, however, if the petitioner fails to produce any new evidence. *See, e.g., Pratt v. Filson*, 705 F. App'x 523, 525 (9th Cir. Aug. 4, 2017). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324 (1995). "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin*, 569 U.S. at 401 (citing *Schlup*, 513 U.S. at 316).

Hernandez has produced no new compelling evidence that would allow him to pass through this gateway and obtain relief from his procedural default. His assertion is that he is innocent of the crime, and that "the prosecution have [sic] zero corroborating evidence to support testimony or my own admission." (Doc. 8 at 6.) However, if this is true, it was true at the time Hernandez pled guilty on the record in 2017. (Doc. 1-1 at 42.) Hernandez knew the evidence he faced when he changed his plea to guilty, and in light of his admissions on the record at his sentencing and in the evaluation he participated in, the Court concludes that he knew he had committed the crime for which he was sentenced at the time. (Doc. 1-1 at 46 – 47, 103 – 104.)

*Pratt* is particularly instructive in this case because it discusses a similar factual proposition. As "new" evidence, Hernandez presumably would provide his own testimony at trial that he did not commit these crimes, or he would rely on the jury not believing the testimony of the victim. "Assuming that [Hernandez] would testify at trial, his testimony would, at most, create a credibility dispute. A reasonable juror easily could believe the victim's account" over his. *Pratt*, 705 F. App'x at 525. "[I[f a habeas petitioner's own testimony disputing that he committed the crime were enough to satisfy the actual innocence gateway's "exacting" standard, that gateway would be open in nearly every case, not "only in the 'extraordinary' case." *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011) (en

banc). Hernandez has not passed through the actual innocence gateway to excuse his procedural default.

Accordingly, IT IS ORDERED:

1. Hernandez's motion petition for writ of habeas corpus under 28 U.S.C. § 2254 is DISMISSED.

2. The clerk shall enter, by separate document, a judgment of dismissal.

3. A certificate of appealability is DENIED. The clerk shall immediately process the appeal if Hernandez files a notice of appeal.

DATED this 23rd day of January, 2023.

14:25 T.M

Donald W. Molloy, District Judge
United States District Court